1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   FELIPE ROMAN HOLGUIN,                   Case No.  19-cv-00757-HBK

11                     Plaintiff,            FINDINGS AND RECOMMENDATIONS TO
                                             GRANT DEFENDANTS' MOTION FOR
12           v.                              SUMMARY JUDGMENT[1]

13   BELL, DIAZ, RAMOS,                      (Doc. No. 29)

14                     Defendant.            FOURTEEN-DAY OBJECTION PERIOD

15                                           ORDER TO ASSIGN TO DISTRICT JUDGE

16

17

18          Pending before the Court is the Motion for Summary Judgment filed by Defendants Bell,

19   Diaz, and Ramos on July 30, 2020.  (Doc. No. 29, "MSJ").  On August 24, 2020, Plaintiff filed an

20   opposition.  (Doc. No. 33).  On August 31, 2020, Defendants filed a reply, with additional

21   evidence. (Doc No. 34)  Plaintiff filed a sur-reply with new evidence on September 21, 2020.

22   (Doc No. 34).  For the reasons stated below, the undersigned recommends that the Court grant

23   Defendants' MSJ.

24                          I.       BACKGROUND

25   **A.  Summary of Plaintiff's Complaint**

26          Plaintiff Felipe Roman Holguin ("Plaintiff" or "Holguin"), a state prisoner, initiated this

27

28   _____
     [1] The undersigned submits these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1).

action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 on March 21, 2019.  (Doc.
No. 1).  In the complaint signed under penalty of perjury, Plaintiff alleges that between August
31, 2018 and September 6, 2018, while he was incarcerated at Corcoran State Prison, Defendants
left him in a cell in which his toilet overflowed with fecal matter and urine.  (Doc. No. 1 at 1 ¶ 2,
3 ¶ 3, 4 ¶ 3, 5 ¶ 3).  He asserts that he complained repeatedly about the sewer line being clogged,
having no plunger, about his property being destroyed, about experiencing nausea, vomiting,
rashes, headaches, and mental distress, losing weight, and having nowhere to go to the bathroom.
(*Id.* at 3 ¶¶ 3-4, 4 ¶¶ 3-4, 5 ¶¶ 3-4).  He also complained he was forced to eat meals in his
contaminated cell.  (*Id.* at 3 ¶¶ 3-4, 4 ¶¶ 3-4, 5 ¶¶ 3-4).  He requests free medical and mental
health care, as well as a separate toilet from his cell, and monetary compensation for his lost
property and pain and suffering.  (*Id.* at 6 § E).

Regarding exhaustion of his claims through the prison's grievance process, on each of his
three claims against Defendants, Plaintiff checked the "Yes" boxes on the civil rights complaint
template, indicating that (1) administrative remedies were available at the institution, (2) he
submitted a request for administrative relief, and (3) he appealed his request for relief to the
highest level.  (Doc. No. 1 at 3 ¶ 5(a)-(c), 5 ¶ 5(a)-(c), 6 ¶ 6(a)-(c)).  Immediately below these
questions, the complaint form states: "If you did not submit or appeal a request for administrative
relief at any level, briefly explain why you did not."  (*Id.* at 3 ¶ 5(d), 5 ¶ 5(d), 6 ¶ 6(d)).  For each
defendant, Plaintiff left this section blank.  (*Id.* at 3 ¶ 5(d), 5 ¶ 5(d), 6 ¶ 6(d)).

**B.  Court's Screening Order**

In its screening order dated October 11, 2019, the then-assigned magistrate judge
construed the complaint as follows: "Plaintiff raises a conditions-of-confinement claim for a
week-long stay in a cell covered in feces and sewer water, without a working toilet."  (Doc. No.
12 at 8).  The Court held this claim was viable as to Defendants Bell, Diaz, and Ramos, but not as
to Defendant Borquez.  (*Id.* at 6.)  The Court also made clear: "He has stated no other claims."
(*Id.*)  In response to this order, Plaintiff filed a notice advising the Court of his "'willingness to
proceed only on the claims sanctioned by the Court's order and voluntarily dismiss all other
claims and Defendants' per the Court's order of October 11, 2019."  (Doc. No. 13).  He also filed

an additional notice stating: "I wish to stand on my complaint, subject to dismissal of claims and defendants consistent with this order."  (Doc. No. 16).

### C.  Discovery Filings

On April 30, 2020, the Court issued a scheduling order describing discovery procedures and the relevant Federal Rules.  (Doc. No. 25).  The docket reflects that on May 11, 2020, Plaintiff filed a motion for discovery, seeking a statement from his psychologist, the identity of staff present at Plaintiff's cell between 8/20/18 and 9/10/2018, and evidence from the plumber on duty.  (Doc. No. 26).  On May 1, 2020, Defendants responded stating that they "are prepared to respond to discovery requests from Plaintiff.  However, at this time, Defendants have not been served with any discovery requests."  (Doc. No. 27).  On June 22, 2020, the Court issued an order on Plaintiff's motion for discovery, in which it stated that Plaintiff should serve discovery requests directly on Defendants' counsel.  (Doc. No. 28 at 1).  The Court then provided the address for Defendants' counsel.  (*Id.*)

### D.  Evidence Initially Submitted by Defendants in Support of MSJ

Over a month later, on July 30, 2020, Defendants filed their MSJ.  (Doc. No. 29).  As part of this filing, Defendants served Plaintiff with a warning under *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1988), that described Plaintiff's obligations in responding to a summary judgment motion.  (Doc. No. 29-1).

Defendants' MSJ submission directly addresses the claims determined to be at issue in the screening order and Plaintiff's notices.  (*See* Doc. Nos. 12, 13, 16).  The evidence reflects that in early September 2018, Plaintiff submitted grievance, log number CSPC-7-18-4532.  (Doc. No. 29-4 at 3 ¶¶ 7-9, 6, 8-12).  In it, Plaintiff contends his toilet was overflowing and out of use since August 31, 2018.  (Doc. No. 29-4 at 8-11).  He requests a plunger or plumber to clean out the sewage line, as well as a medical evaluation due to severe headaches.  (*Id.* at 8 § B).  Grievance CSPC-7-18-4532 was initially screened out at the first level of review because it was bound with string.  (Doc. No. 29-4 at 3 ¶ 9, 8-11).  On September 25, 2018, Plaintiff resubmitted the grievance and it was screened in at the first level.  (*Id.* at 3 ¶ 10, 6).  On October 12, 2018, Plaintiff withdrew CSPC-7-18-4532 on the grounds that the issue had been resolved, as his toilet

1     was fixed.  (Doc. No. 29-4 at 6, 9).

2               **E.  Evidence Submitted in Opposition and Reply**

3               On August 24, 2020, Plaintiff sought additional time to file his summary judgment

4     opposition.[2]  (*See* Doc. Nos. 30, 31).  The grounds for this request were that he needed additional

5     time to access the law library, which was restricted during the COVID-19 pandemic, and that he

6     needed discovery in the form of grievance CSPC-7-18-04322.  (Doc. Nos. 30, 31).

7               On the same date he sought to extend the MSJ deadlines, Plaintiff submitted an opposition

8     brief and statement of disputed facts, sworn under penalty of perjury.  (Doc. Nos. 32, 33).  He did

9     not dispute any facts relating to his September 2018 grievance, CSPC-7-18-4532.  (*See* Doc. Nos.

10    29-3; 33 at 1 ¶ 1).  He concedes he withdrew that grievance and did not pursue it further.  (Doc.

11    Nos. 29-3; 33 at 1 ¶ 1).  Additionally, Plaintiff admits Defendants' statement of undisputed fact

12    that "Plaintiff has not appealed any grievance on any issue that has been screened in at the third

13    and final level of review with the Office of Appeals."  (Doc. Nos. 29-3 at 2 ¶ 9; 33 at 1 ¶ 1).

14              Plaintiff did not submit argument or any of his own evidence relating to grievance CSPC-

15    7-18-4532.  (*See* Doc. Nos. 32, 33).  Nor did he submit any evidence or argument suggesting that

16    he was discouraged, dissuaded, or frustrated from pursing any grievance.  (*Id.*).  Instead, Plaintiff

17    focused on grievance CSPC-7-18-4322, which he indicates was filed prior to CSPC-7-18-4532.

18    (Doc. No. 33 at 2 ¶ 5).  He states that grievance was exhausted and referred the Court to that

19    grievance, asserting, incorrectly, that "he has filed a copy of this exhausted 602 with attachments

20    and decision responses with the Court previously."  (Doc. No. 33 at 2 ¶ 4).  He also declared,

21    more specifically, that CSPC-7-18-4322 "went to 3rd level of review and response indicating

22    'Exhausted' was issued."  (*Id.* ¶ 6).

23              On reply, in direct response to Plaintiff's assertions regarding CSPC-7-18-4322,

24    Defendants submitted that grievance with attachments.  (Doc. No. 34-1 at 5-22).  The record

25    reflects the grievance was initially denied on September 26, 2018.  (Doc. No. 34-1 at 5; *see also*

26    Doc. No. 29-4 at 6).  The first-level review letter states that Plaintiff was given the opportunity to

27    _____

28    [2] At this point, Plaintiff's submissions change handwriting and also become all caps.  All caps will be
removed in quotations of Plaintiff's filings.

provide additional supporting evidence, documents, or witnesses, but Plaintiff was unable to do so.  (Doc. No. 34-1 at 10).  It also states that Plaintiff was afforded the opportunity to be seen by a registered nurse on August 8, 2018, but Plaintiff refused.  (*Id.*).  The letter indicates the grievance was denied "due to you being unable to verify your property damage, refusal to be medically evaluated, and the cell toilet was fixed in a timely manner."  (*Id.* at 10.)

The record evidence of CSPC-7-18-4322 also reflects that Plaintiff submitted a request for second level review of the grievance, which was received on October 3, 2018.  (Doc. No. 34-1 at 5-6; *see also* Doc. Nos. 29-4 at 6; 35 at 12 ¶ 17).  On October 16, 2018, at second level review, grievance CSPC-7-18-4322 was granted in part.  (Doc. No. 34-1 at 6, 8; *see also* Doc. No. 29-4 at 6).  The second-level review letter states Plaintiff's requests to have his property replaced and for compensation granted were denied, and that his request for a medical appointment was granted, but Plaintiff had previously refused to attend that appointment.  (Doc. No. 34-1 at 8; *see also id.* at 10).

### F.  Evidence Submitted on Sur-Reply

Three weeks after Defendants filed their reply, Plaintiff submitted a 15-page sur-reply, including new legal arguments and a second declaration.  (Doc. No. 35).  Plaintiff did not seek permission to file the sur-reply, nor state any facts that justified his filing of a sur-reply at that time.  (*See id.*).

In this sur-reply, Plaintiff concedes that, in fact, he did not proceed to the third level of review on either grievance CSPC-7-18-4322 or CSPC-7-18-4532.  (Doc. No. 35 at 1; *see also id.* at 3-6; 33 at 1 ¶ 1).  Then, taking a new tactic, Plaintiff for the first time asserts that his failure to exhaust was excused because two different officials told him "'no further remedies requested" were available by the appeal grievance process.  (Doc. No. 35 at 4).

First, he claims that J. Singh, the person who interviewed him regarding his grievance of the August 31, 2018 toilet malfunction, "really harassed and dissuaded Plaintiff from continuing on with grievance number 2 [CSPC-7-18-04532] as: 'irrelevant; remedied; and no longer available as a previous grievance had been filed; and time limits expired.'"  (Doc. No. 35 at 2; *see also id.* at 5).  These representations are not reflected on the grievance form or attachments.  (*See*

1   Doc. No. 29-4 at 8-12).  Similarly, with respect to grievance CSPC-7-18-4322, Plaintiff contends

2   that Lieutenant Marmolejo advised him at second-level review that he "has no more 'available'

3   remedies," as his requested remedies were granted in part.  (Doc. No. 35 at 12 ¶ 17).  Neither of

4   these representations are reflected on the grievance form or attachments.  (*See id.*).  Plaintiff

5   argues he believed he received credible information from prison officials that the CDCR appeal

6   process could not grant him compensatory damages from the toilet overflow incident and that a

7   42 U.S.C. § 1983 action was the only available remedy remaining.  (*Id.*).

8       He then goes on to state that, in any event, between October 16, 2018 and November 15,

9   2018—when his third-level appeal on CSPC-7-18-4322 was due—he had no stamped envelopes

10  to mail his request because they had been destroyed when the toilet first overflowed on August 1,

11  2018.  (Doc. No. 35 at 12 ¶ 18).  He states that his requests for envelopes made to unidentified

12  prison officials on unidentified dates were denied, but he eventually received envelopes from

13  other inmates.  (*Id.*).

14                          **II.    APPLICABLE LAW**

15          **A.  Summary Judgment Standard**

16      Summary judgment is appropriate when there is "no genuine dispute as to any material

17  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The scope

18  of the complaint determines which claims are at issue, and thus what facts are relevant.  *See, e.g.,*

19  *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017).  A fact is

20  material where it is (1) relevant to an element of a claim or a defense under the substantive law

21  and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

22  247 (1987).

23      In a case under the Prison Litigation Reform Act of 1995 ("PLRA"), failure to exhaust

24  administrative remedies is an affirmative defense that the defendant must plead and prove.  *Jones*

25  *v. Bock*, 549 U.S. 199, 211 (2007).  The defendant's burden is to "to prove that there was an

26  available administrative remedy, and that the prisoner did not exhaust that available remedy."

27  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Once the defendant meets that burden, the

28  plaintiff has the burden of coming forward with admissible evidence "showing that there is

6

1   something in his particular case that made the existing and generally available administrative

2   remedies effectively unavailable to him." *Fordley v. Lizgarra*, 18 F.4th 344, 2021 U.S. App.

3   LEXIS 33395, *15 (9th Cir. 2021). The ultimate burden of proving that the plaintiff has not

4   exhausted his claims remains with the defendants. *Id.*

5          The court must view the evidence in the light most favorable to the nonmoving party.

6   *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility

7   determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). The court will liberally

8   construe *pro se* prisoner filings and "avoid applying summary judgment rules strictly." *Thomas*

9   *v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "This rule exempts *pro se* inmates

10  from *strict* compliance with the summary judgment rules, but it does not exempt them

11  from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (emphasis in

12  original).

13         If the court finds that the plaintiff "has exhausted available administrative remedies, that

14  administrative remedies are not available, or that a prisoner's failure to exhaust available remedies

15  should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171. "[I]f a factual

16  finding on a disputed question is relevant both to exhaustion and to the merits, a judge's finding

17  made in the course of deciding exhaustion is not binding on a jury deciding the merits of the suit."

18  *Id.* at 1171.

19         **B. Exhaustion Under the PLRA**

20         Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

21  U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

22  correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

23  § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life." *Porter v.*

24  *Nussle*, 534 U.S. 516, 532 (2002). It is condition precedent to filing a civil rights claim.

25  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

26         The PLRA recognizes no exception to the exhaustion requirement, and the court may not

27  recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648

28  (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the

7

1  prisoner." *Id.* at 639.  A prison's internal grievance process controls whether the grievance

2  satisfies the PLRA exhaustion requirement.  *Jones*, 549 U.S. at 218.

3      **C. CDCR Grievance Procedures**

4      CDCR's administrative remedy process governs this action.[3]  *See* Cal. Code Regs. tit. 15,

5  § 3084.1 (2016).  At the time relevant to this action, a prisoner was required to proceed through

6  three formal levels of review, unless otherwise excused under the regulation, to exhaust available

7  remedies.  *Id.*, § 3084.5.  A prisoner initiates the exhaustion process by submitting a CDCR Form

8  602, Inmate/Parolee Appeal ("grievance").  *Id.*, §§ 3084.2(a), 3084.8(b).  The grievance must

9  "describe the specific issue under appeal and the relief requested" and "shall list all staff

10  member(s) involved and shall describe their involvement in the issue."  *Id.*, § 3084.2(a).  The

11  prisoner "shall state all facts known and available to him/her regarding the issue being appealed at

12  the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal

13  Form Attachment."  *Id.*, § 3084.2(a)(4).

14      If dissatisfied with the first-level response, the prisoner must appeal to the second level.

15  Like the first level appeal, the second level is handled by the institution.  *Id.*, § 3084.2(c).  The

16  appeal must be submitted within thirty calendar days of "[t]he occurrence of the event or

17  decision being appealed," or "[u]pon first having knowledge of the action or decision being

18  appealed," or "upon receiving an unsatisfactory department response to an appeal filed."  *Id.*, §

19  3084.8(b)(1)-(3).

20      After the second-level response, a dissatisfied prisoner must appeal to the third level of

21  review.  *Id.*, §§ 3084.2(d), 3084.7(c), 3084.8(d).  This review is handled by CDCR's Office of

22  Appeals.  *Id.*, § 3084.2(d).  The appeal must be served by mail to the Appeals Chief, again

23  within thirty calendar days.  *Id.* §§ 3084.2(d), 3084(b)(1)-(3).   It is this third level of review,

24  and the one that exhausts administrative remedies.  *Id.*, §§ 3084.1(b), 3084.7(d)(3).

25  //

26

---

27  [3] The Court cites to the regulations in force at the relevant time period.  In June 2020, these regulations
were amended and changed the former three-step "appeal" process to a two-step process generally.  *See*
28  Cal. Code Regs. tit. 15, § 3480-3487 (2021).

### III.    ANALYSIS

### A.  Plaintiff Failed to Exhaust Grievance CSPC-7-18-4532

The claims in this case arise out of the toilet malfunction in Plaintiff's cell affecting him between August 31, 2018 and September 6, 2018.  (Doc. Nos. 1, 12, 13, 16).  In their MSJ, Defendants submitted evidence that Plaintiff filed grievance CSPC-7-18-04532, signed on September 1, 2018, and that this grievance specifically related to the toilet malfunction beginning on August 31, 2018.  (Doc. No. 29-4 at 3 7-22).  Defendants also submitted evidence that Plaintiff withdrew this grievance before a first-level response was issued and did not pursue the grievance any further after he withdrew it.  (*Id.*).  Plaintiff admits these facts.  (Doc. No. 33 at 1-2 ¶ 1).  Thus, the undisputed material facts show that Plaintiff did not obtain first, second, or third-level review of his claims relating to the August 31, 2018 to September 6, 2018 toilet malfunction.  Defendants have thus satisfied their initial burden to establish that Plaintiff failed to administratively exhaust grievance CSPC-7-18-04532, and his claims must be dismissed.  *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002).

### B.  Plaintiff Did Not Exhaust Through Grievance CSPC-7-18-04322

In his initial opposition to Defendants' MSJ, Plaintiff took the position that a grievance predating the August 31, 2018 incident at issue in this case satisfied his exhaustion obligations.  He argues that through pursuit of grievance CSPC-7-18-04322, which was filed on August 22, 2018, and before the earliest date of the claim raised in the Complaint, he administratively exhausted his claim.  (Doc. Nos. 32, 33).  This argument defies common sense.  *See, e.g., Polley v. Davis*, No. 17-CV-03793-JST, 2018 WL 4352958, at *10 (N.D. Cal. Sept. 11, 2018) (2015 request "could not, and did not, exhaust his administrative remedies for his claim regarding prison personnel actions in 2017").

This argument also runs directly contrary to CDCR policy.  Under the relevant regulation, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted" grievance.  Cal. Code. Regs. tit. 15, § 3084.1(b).  Grievance CSPC-7-18-04322 related solely to the toilet malfunction on August 1, 2018.  (Doc. No. 34-1 at 5-7).  In it, Plaintiff states

that on August 1, 2018 at 3:00 a.m., the toilet malfunctioned (*Id.* at 1 § A), they were not let out

of the cell until 9:00 a.m. (*id.* at 7 § A), and they were then forced to clean up the mess (*id.*).  (*See*

Doc. No. 35 at 10 ¶¶ 11-13).  The grievance does not reflect any ongoing issues with the toilet

and Plaintiff does not request to be moved to another cell due to the conditions.  (*See* Doc. No.

34-1 at 5 § A, 7 § A).  Plaintiff's grievance plainly does not encompass issues arising after

August 1, 2018.  Pursuant to section 3084.1(b), this deficiency alone requires the Court to reject

Plaintiff's argument that he exhausted via grievance CSPC-7-18-04322.

Plaintiff's other grievance filings confirm that the August 1, 2018 and August 31, 2018

toilet malfunctions were wholly separate incidents, requiring separate grievances.  His September

grievance, CSPC-7-18-04532, states: "I have been without the use of my toilet since Friday the

31st" (Doc. No. 29-4 at 8 § A), "[I] have had a problem with my toilet for 3 days" (*id.* at 10 § A),

and "this is the 2nd time this has happened" (*id.*).  Plaintiff's appeal of his first grievance, CSPC-

7-18-04322, signed on October 2, 2018, also failed to include any allegations about the August

31, 2018 to September 6, 2018 toilet malfunction or about ongoing issues with the toilet.  (*Id.* at 6

§ D).

Thus, Plaintiff fails to create a genuine dispute of fact as to whether his August 22, 2018

grievance, CSPC-7-18-04322, exhausted administrative remedies relating to the August 31, 2018

to September 6, 2018 toilet malfunction.

**C.  Plaintiff's Sur-reply Does Not Create A Genuine Dispute of Fact Regarding Exhaustion**

**1.  It Is Undisputed Plaintiff Failed to Take Grievance CSPC-7-18-04322 to Third-Level Review**

The other reason CSPC-7-18-04322, filed August 22, 2018, does not assist Plaintiff's

position is that he did not take that grievance to third-level review.  In his sur-reply, Plaintiff

concedes this fact.  (Doc. No. 35-1 at 1).  Less than a month before this concession, however, he

had unambiguously represented to the Court that grievance CSPC-7-18-04322 was submitted to

"3rd level of review and a response indicating 'Exhausted' was issued."  (Doc. No. 33 at 2 ¶ 6).

In neither filing does Plaintiff explain this direct contradiction.  (*See* Doc. No. 35).  He does not,

1    for example, state that he confused CSPC-7-18-04322 with another grievance that had gone to the

2    third level and come back "Exhausted." (*See id.*).  Nor does he even state in his sur-reply that he

3    was mistaken in his earlier filing.  (*See id.*).

4         The Court recognizes that Plaintiff is proceeding *pro se* and liberally construes his filings.

5    *E.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  What the Court cannot approve of, however, is

6    Plaintiff's misrepresentation to the Court and his failure to acknowledge or attempt to explain the

7    inconsistency.  Rule 56 includes express authority for the court to issue sanctions if a party

8    submits a declaration in bad faith or solely for delay.  Fed. R. Civ. P. 56(h).  In appropriate

9    circumstances, the Court may, under Rule 11 and 28 U.S.C. § 1927, or even its inherent authority,

10   sanction a party for misuse of the litigation process.  *See, e.g., Wages v. IRS*, 915 F.2d 1230,

11   1235-46 (upholding sanction against pro se party under 28 U.S.C. § 1927); *Miletak v. AT&T*

12   *Services, Inc.*, 2020 WL 6497925 (N.D. Cal. 2020), *3-4 (sanctioning *pro se* party under inherent

13   authority and collecting cases).  At this stage, and given Plaintiff's more recent admission,

14   however, the Court finds it undisputed that Plaintiff failed to proceed to the third level of review

15   on CSPC-7-18-04322.

16         **2.   Whether to Consider the Remainder of Plaintiff's Sur-reply**

17        No Federal Rule of Civil Procedure or Local Rule authorizes a sur-reply.  Under Local

18   Rule 230(*l*), a motion in a prisoner action is deemed submitted "when the time to reply has

19   expired."  Thus, Plaintiff was not authorized to file a sur-reply without the Court's express

20   permission, and the Court could strike Plaintiff's sur-reply and supporting evidence.

21         **a.   Sur-reply Evidence**

22        The Court notes Plaintiff sought an extension of the MSJ deadline on the grounds that he

23   needed additional discovery.  (Doc. No. 31).  The Court eventually denied this motion as moot

24   given Plaintiff's opposition and sur-reply.  (Doc. No. 38).  The Court deems it appropriate to

25   reconsider and clarify its ruling at this time.  Fed. R. Civ. P. 54(b).

26        In his Rule 56(d) request to continue the MSJ deadline, Plaintiff asserted that he needed a

27   copy of grievance CSPC-7-18-04322.  (*Id.*).  Plaintiff's initial discovery filing with the Court,

28   filed in April 2020, did not mention this grievance.  (*See* Doc. No. 26).  Nor did Plaintiff's motion

state that he had otherwise attempted to obtain a copy of the grievance through discovery, before or after Defendants' MSJ was filed, but was denied or prevented from doing so. (*See* Doc. No. 31). Thus, his motion failed to comply with Rule 56(d) and did not warrant a continuance. Fed. R. Civ. P. 56(d) (to obtain extension, non-moving party must show that "for specified reasons, it cannot present facts essential to justify its opposition"). The Court therefore denies Plaintiff's motion to continue the MSJ deadlines because Plaintiff failed to satisfy the requirements of Rule 56(d) (Doc. No. 31). The Court further denies the motion as moot given Defendants' submission of the requested evidence (Doc. No. 34-1). Accordingly, the Court finds that the motion was deemed submitted on August 31, 2020, the date of Defendants' reply.

The Court notes that, as just discussed, Defendants did submit additional evidence on reply which, in appropriate circumstances, can warrant a sur-reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence submitted in reply should not be considered without affording non-moving party opportunity to respond). Defendants submitted a copy of grievance CSPC-7-18-04322. (Doc. No. 34). This evidence did not represent "new" facts, however. First, Defendants' initial MSJ filing included evidence that grievance CSPC-7-18-04322 was filed and partially granted at second-level review. (Doc. No. 29-4 at 6). In his initial opposition papers, Plaintiff referred to Defendants' evidence (*see* Doc. No. 33 at 2 ¶ 5); represented this grievance had already been filed with the Court (*see id.* at 2 ¶ 4); and addressed the content of this grievance and the responses thereto (*see id.* at 2 ¶¶ 3, 6). Evidence submitted "in direct response to proof adduced in opposition to a motion" is not "new." *Edwards v. Toys "R" Us*, 527 F.Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007) (reply evidence that offered different interpretation of same conversation described by Plaintiff in opposition did not offer new facts). Thus, the fact that Defendants submitted grievance CSPC-7-18-04322 on reply does not warrant Plaintiff's second declaration on sur-reply.

The Court therefore declines to consider the new evidence submitted by Plaintiff on sur-reply on September 21, 2020.

### 3. "Special Circumstances" Cannot Justify Plaintiff's Failure to Exhaust

In his sur-reply memorandum, Plaintiff contends "special circumstances," such as his

12

1    mental health condition, excuse any failure to exhaust.  (*See* Doc. No. 35 at 6-7).  The Supreme

2    Court, however, has expressly held that a "special circumstances" exception is inconsistent with

3    the text and history of the PLRA.  *Ross*, 578 U.S. at 638-39.  The PLRA requires exhaustion of

4    available administrative remedies; availability is the only qualifier.  *Id.* at 639.  Courts may not

5    exercise discretion to recognize exceptions to mandatory exhaustion.  *Id.* at 639, 641; *see Ruiz v.*

6    *Sadler*, 2021 WL 106572, *2 (E.D. Cal. 2021) (finding no discretion to excuse exhaustion when

7    plaintiff alleged limited English proficiency).  Harsh or not, this is the system Congress has

8    designed for claims from incarcerated persons.  *See Ross*, 578 U.S. at 639.  Thus, no "special

9    circumstances" justify Plaintiff's failure to exhaust administrative remedies.

10                  **4.   Plaintiff Failed to Create a Dispute of Fact that Failure to Exhaust Was**

11                        **Excused**

12           In his sur-reply, Plaintiff submits that he was justified in failing to exhaust because of

13   statements by prison officials.  In support, he cites *Brown v. Valoff*, 422 F.3d 926, 936-937 (9th

14   Cir. 2005).  In particular, Plaintiff argues that the following statement provides him cover in this

15   case: "a prisoner need not press on to exhaust further levels of review once he has either received

16   all 'available' remedies at an intermediate level of review or been reliably informed by an

17   administrator that no remedies are available."  (Doc. No. 35 at 4).  Plaintiff asserts that, after

18   further reflection following his initial summary judgment opposition, which did not include any

19   facts or contentions that prison officials influenced his exhaustion decisions, both prison officials

20   who communicated with him about his grievances informed him that his requested remedies were

21   not available.  (Doc. No. 35 at 4-5).

22                        **a.   Grievance CSPC-7-18-04532**

23           Grievance CSPC-7-18-04532, dated September 1, 2018, is the grievance directly relevant

24   to this case, as it complained of the toilet malfunction beginning August 31, 2018.  (Doc. No. 29-

25   4).  In his initial opposition, Plaintiff did not even mention this grievance.  (Doc. Nos. 32-33).  He

26   did not state that he was discouraged from proceeding to the third level of review or that he was

27   advised he had received "all available remedies."  (*See id.*).  Nor did Plaintiff's request to

28   continue the MSJ deadline on the grounds he needed additional discovery mention anything

1   related to this grievance.  (Doc. No. 31).  In his sur-reply Plaintiff makes no attempt to explain

2   why he failed to include any facts relating to this grievance in his initial opposition or to explain

3   how any evidence relating to grievance CSPC-7-18-04532 was responsive to Defendants'

4   position on reply.  (*See* Doc. No. 35).  The Court finds that Plaintiff was not justified in waiting to

5   the sur-reply to submit evidence relating to grievance CSPC-7-18-04532 and declines to consider

6   any such evidence.

7          Even if the Court were to consider Plaintiff's sur-reply position relating to CSPC-7-18-

8   04532, the Court would find that it does not create a dispute of material fact about exhaustion.

9   *See Soto*, 882 F.3d at 873.  In his sur-reply memorandum, which is not signed under penalty of

10   perjury, Plaintiff states that interviewer J. Singh "really harassed and dissuaded Plaintiff from

11   continuing on with grievance number 2 [CSPC-7-18-04532, dated September 1, 2018] as:

12   'irrelevant; remedied; and no longer available as a previous grievance had been filed; and time

13   limits expired.'"  (Doc. No. 35 at 2; *see also id.* at 5).  This is not evidence, however.  *See* Fed. R.

14   Civ. P. 56(c)(4); 28 U.S.C. § 1746.  Neither of Plaintiff's declarations opposing summary

15   judgment describe any communications between Plaintiff and J. Singh or even mention J. Singh

16   at all.  (*See* Doc. No. 35 at 8-14; *see also* Doc. No. 32).  Holding Plaintiff to basic evidentiary

17   rules on summary judgment is appropriate.  *See Soto*, 882 F.3d at 873 (where plaintiff and made

18   statements supporting tolling only in memoranda, not in sworn his complaint or in either

19   summary judgment affidavit, court properly granted summary judgment for lack of competent

20   opposition evidence).

21          Moreover, even if this statement was in Plaintiff's declaration, it would fail to create a

22   genuine dispute of fact as to whether Plaintiff was excused from exhausting grievance CSPC-7-

23   18-04532.  Evidence submitted in opposition to summary judgment must be sufficient to allow a

24   reasonable trier of fact to find in favor of the opposing party on the issue in question.  *In re*

25   *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The confusing statement Plaintiff

26   attributes to J. Singh does not reach this level.  It is not clear if Plaintiff is suggesting that J. Singh

27   actually communicated the words "irrelevant; remedied; and no longer available as a previous

28   grievance had been filed; and time limits expired" or if that was merely Plaintiff's impression.

1    No string of statements is reflected on grievance CSPC-7-18-04532 or any other record evidence.

2    (*See* Doc. No. 29-4 at 8-12).  The "Request to Withdraw Appeal" section of the grievance appears

3    signed by a J. Singh, as well as by Plaintiff, both on October 8, 2018.  (*Id.* at 10 § F).  And it

4    appears to state, *inter alia*, "already repaired" and "your repairs were completed; therefore you

5    chose to withdraw this appeal."  (*Id.*).  The document does not state anything about the grievance

6    being "irrelevant," about the grievance being "no longer available as a previous grievance" was

7    filed, or about "time limits expired."[4]  (*See id.*).

8         Plaintiff's other description of J. Singh's communication fails to shed further light.

9    Plaintiff states that "the official who 'informed' Plaintiff there were no further remedies available

10   that were requested on the 2nd 602 appeal is signed by Officer J. Singh."  (Doc. No. 35 at 5).

11   Plaintiff's use of "informed" in quotation marks increases the ambiguity.  Again, is Plaintiff

12   indicating that J. Singh actually communicated the words that there were no further requested

13   remedies available or merely that he felt "informed" no requested remedies were available?

14   Because Plaintiff fails to provide an actual description of a conversation or the context and

15   manner in which J. Singh made the list of statements attributed to him, the Court determines that

16   even if it construed Plaintiff's statements regarding J. Singh as evidence and viewed them in the

17   light most favorable to Plaintiff, they would not create a genuine dispute of material fact.

18        **b.   Grievance CSPC-7-18-04322**

19        Grievance CSPC-7-18-04322 related to the August 1, 2018 toilet malfunction.  (Doc. No.

20   34-1; *see also supra* at 9-10).  In his initial opposition, Plaintiff asserted merely that Defendants

21   failed to acknowledge this grievance.  (Doc. Nos. 32-33).  He did not explain why this grievance

22

23   _____

     [4] The statement that J. Singh informed Plaintiff "time limits expired" is a curious one.  There is no
24   suggestion in the record that either of Plaintiff's grievances were filed out of time.  As the record reflects,
     CSPC-7-18-04322 was filed on or about August 22, 2018, relating to the August 1, 2018 toilet
25   malfunction, while CSPC-7-18-04532 was filed in early September, relating to the August 31, 2018 toilet
     malfunction, and refiled on September 25, 2018.  (*See* Doc. No. 29-4; *see also* Doc. No. 34-1).  All of
26   these dates are well within the 30-day deadline. *See* Cal. Code Regs., tit. 15, § 3084.8(b)(1)-(3).
     Moreover, on October 8, 2018 when the "Request to Withdraw Appeal" was apparently completed,
27   Plaintiff had only recently received the initial denial of CSPC-7-18-04322, dated September 26, 2018, and
     already timely appealed it, on October 2, 2018.  (Doc. No. 34-1 at 5 § C, 6 § D).  In any event, Plaintiff
28   has not explained if or how this statement may have impacted his decision not to proceed with CSPC-7-
     18-04532 and the Court is left to conclude this is perhaps a misquote or misattribution.

1   related to this action other than to state it was "concerning living conditions." (Doc. No. 32 at 2;

2   *see also* Doc. No. 33). He did not state that he was discouraged from proceeding to the third level

3   of review or that he was advised he had received "all available remedies." (*See* Doc. Nos. 32-33).

4   In his sur-reply Plaintiff makes no attempt to explain why he failed to include any facts to support

5   his position that he was told he has exhausted all "requested remedies." (*See* Doc. No. 35). The

6   Court finds that Plaintiff was not justified in waiting until the sur-reply to submit evidence

7   suggesting that he was excused from proceeding to third-level review on grievance CSPC-7-18-

8   04322.

9        Even if the Court were to consider Plaintiff's sur-reply evidence relating to CSPC-7-18-

10  04322, the Court would find that it failed to create a genuine dispute of material fact as to

11  exhaustion. Plaintiff declares that on October 16, 2018, he "was instructed by Lieutenant

12  Marmolejo that the 602 appeal has no more 'available' remedies as the 2 requested remedies were

13  granted in part (as to medical exam) and denied as to compensation for illness and suffering.

14  (Only court could remedy)." (Doc. No. 35 at 12). He goes on to state "Plaintiff believes that the

15  official gave him credible information that the CDCR 602 appeal process could not grant him

16  compensatory damages from incident and the 42 U.S.C. § 1983 was only available remedy for

17  remaining 'requested actions' on appeal money damages."[5] (*Id.*).

18       Critically, Plaintiff does *not* suggest that Lieutenant Marmolejo was referring to remedies

19  for the August 31, 2018 toilet malfunction, which is the only incident at issue in this case. (*See*

20  Doc. No. 35). Nor does the record support a reasonable inference that Lieutenant Marmolejo was

21  referring to the August 31, 2018 incident. (*See* Doc. No. 35 at 8-14). As discussed *supra*, neither

22  Plaintiff's initial CSPC-7-18-04322 submission nor his appeal mentioned anything about August

23  31, 2018 or his grievance related to the toilet malfunction on that date. Plaintiff does indicate that

24  he otherwise communicated to Lieutenant Marmolejo that CSPC-7-18-04322 covered the August

25  31, 2018 incident. (*See* Doc. No. 35 at 8-14). There is simply no basis on which to infer that

26

27  [5] Plaintiff makes similar, additional allegations regarding what he was "informed" by Lieutenant
    Marmolejo in his memorandum. (*See* Doc. No. 35 at 4-5). He does not include these in his declaration,
28  and the Court therefore does not consider them evidence. *See Soto*, 882 F.3d at 872-73.

1   Lieutenant Marmolejo was aware of and referring to the August 31, 2018 incident when he

2   communicated with Plaintiff.

3       The record evidence confirms that CSPC-7-18-04322 was indeed limited to the August 1,

4   2018 incident.  The second-level review letter for that grievance, dated October 16, 2018, the

5   same date Plaintiff asserts he communicated with Lieutenant Marmolejo, describes the "problem"

6   as:

7
> You contend on August 1, 2018 your toilet overflowed and caused
> sewage to overflow on to you [*sic*] cell floor.  You claim you had
8   > personal and legal property destroyed because of this situation.  You
> also claim on the First Level Response (FLR) the staff interviewed
9   > at the FLR were not on duty when your toilet overflowed.

10  (Doc. No. 34-1 at 8).  The letter does not mention the August 31, 2018 toilet malfunction.  (*See*

11  *id.*).  If Plaintiff was dissatisfied this response failed to address his August 31, 2018 incident, he

12  had an avenue for redress.  *See* Cal. Code Regs. tit. 15, §§ 3084(b), 3084.2(d).[6]  In short, Plaintiff

13  has come forward with no evidence supporting his theory that Lieutenant Marmolejo reliably

14  informed him that no requested remedies were available regarding the August 31, 2018 toilet

15  malfunction.

16      The Court also finds that even if the responses to CSPC-7-18-04322 related to the August

17  31, 2018 incident, Plaintiff failed to create a genuine dispute of fact as to whether his failure to

18  exhaust was excused due to Lieutenant Marmolejo.  As with the communication attributable to J.

19  Singh, Plaintiff fails to provide sufficient information about the statement or the context in which

20  it was made.  The record does not support an inference that Lieutenant Marmolejo interviewed

21  Plaintiff or otherwise directly interacted with him.  The second-level review letter indicates that

22  Lieutenant Marmolejo did perform one interview—of Officer Mauch.  (*Id.* at 8).  However, if an

23  interview of the prisoner was performed at the first level, as here, no second-level interview is

24  required.  *See* Cal. Code Regs. tit. 15 § 3084.7(e).  Additionally, if an interview of the prisoner is

25

26  [6] To the extent that Plaintiff attempts to argue that CSPC-7-18-04322 covered the August 31, 2018 toilet
    malfunction because he withdrew grievance CSPC-7-18-04532, in part, on the grounds that it did so, the
27  Court notes that he has failed to submit evidence creating a dispute of fact that he pursued administrative
    remedies on this issue.  *See* Cal. Code Regs. tit. 15, § 3086(f) (when inmate withdraws grievance on the
28  basis of promise of prison officials, and promise is not fulfilled, further administrative review is available).

1    performed at the second-level, the grievance form should so indicate.  (*See* Doc. No. 34-1 at 6 §

2    E).   Grievance CSPC-7-18-04322 does not reflect a second-level interview of Plaintiff by

3    Lieutenant Marmolejo or anyone else.  (*See id.*) ("Date of Interview" and "Interview Location"

4    both blank; "Interviewer" space says "N/A").

5           There is also insufficient evidence to infer that Lieutenant Marmolejo's communication

6    was made in writing.  Such a statement is not reflected on the grievance, nor anywhere else in

7    writing in the record.  (*See* Doc. No. 34-1 at 5-22).  To the contrary, the first-level response states:

8    "This denial is due to you being unable to verify your property damages, refusal to be medically

9    evaluated, and the cell toilet was fixed in a timely manner."  (*Id.* at 11).  The second-level

10   response indicates that "staff afforded you with an appropriate response at the [first-level review].

11   Your request to have your property replaced and compensation for pain and suffering is

12   DENIED."  (*Id.*) (bold removed).  No reasonable juror could construe these statements as

13   communicating to Plaintiff that he was excused from exhausting his administrative remedies.

14   Such an interpretation would conflate mere receipt of a denial or partial grant at the

15   administrative stage with an actual representation that no remedies were available.  *Cf. Brown*,

16   422 F.3d at 931.  And, it would be wholly contrary to CDCR policy, which states that all lower-

17   level reviews can be modified at the third level.  Cal. Code Regs. tit. 15, § 3084.1(b).  Thus, no

18   reasonable juror could find Lieutenant Marmolejo reliably informed Plaintiff that no requested

19   remedies were available for the August 31, 2018 toilet malfunction.

20          Finally, even if the Court was inclined to consider Plaintiff's sur-reply evidence and could

21   reasonably infer that Lieutenant Marmolejo was referring to the August 31, 2018 toilet

22   malfunction, it would conclude *Brown v. Valoff* does not compel the conclusion Plaintiff

23   suggests.  First, the issue in *Brown* was different than the issue here.  As the Ninth Circuit

24   described it, "[t]he question before us is whether Brown and Hall properly exhausted 'such

25   administrative remedies as are available' before proceeding to the district court."  *Brown*, 422

26   F.3d at 934.  Discussing a then-recent Supreme Court case, the Ninth Circuit explained "*Booth*

27   concluded that prisoner plaintiffs must pursue a remedy through a prison grievance process as

28   long as *some* action can be ordered in response to the complaint."  *Id.* at 935 (emphasis in

1   original).  It also noted the Supreme Court had distinguished between exhausting the

2   administrative process and exhausting forms of relief, quoting the Supreme Court's statement that

3   "[i]t makes no sense to demand that someone exhaust 'such administrative [redress]' as is

4   available; one 'exhausts' processes, not forms of relief, and the statute provides that one must."

5   *Id.* at 934.  This gives context to the Ninth Circuit's statement, cited by Plaintiff, that "a prisoner

6   need not press on to exhaust further levels of review once he has either received all 'available'

7   remedies at an intermediate level of review or been reliably informed by an administrator that no

8   remedies are available."  *Id.*

9       Here, Plaintiff seeks to stretch the statement "been reliably informed by an administrator

10   that no remedies are available" beyond the meaning given to it by the Ninth Circuit.  He suggests

11   that so long as an administrator states that the *specific relief* the prisoner requested is not available

12   through the administrative process, the prisoner can then proceed to court.  (*See* Doc. No. 35 at 4)

13   (officials "informed Plaintiff 'no further remedies requested available by the appeal grievance

14   process'").  This is not what *Brown* holds.  Rather, building on *Booth*, *Brown* holds that when a

15   prisoner is reliably informed *no* remedies are available, the prisoner's obligation to exhaust may

16   be excused.  Again, the "remedies" here are not specific forms of relief, but "processes."  *Brown*,

17   422 F.3d at 934 (citing *Booth*, 532 U.S. at 739).

18       Plaintiff's only evidence suggests, at most, that he was informed some of the specific

19   forms of relief he requested could not be provided through the appeals process.  According to

20   Plaintiff, Lieutenant Marmolejo made the "assertion" that "all my *requested* remedies were

21   granted or no longer available through the CDCR's 602 appeal process.  The action requested:

22   compensation for suffering and illness would not be available via the appeal process as an

23   available remedy as this would only be awarded at court."  (Doc. No. 35 at 10-11 ¶ 10; *see also*

24   *id.* at 12) (emphasis added).  In grievance CSPC-7-18-04322, Plaintiff also requested replacement

25   of his personal property.  (Doc. No. 34-1 at 5 § B).  Additionally, in grievance CSPC-7-18-04532,

26   dated September 1, 2018, Plaintiff requested a second medical evaluation due to severe

27   headaches.  (Doc. No. 29-4 at 8 § B; *see also* Doc. No. 34-1 at 10 (in response to Plaintiff's first

28   request for medical appointment, he was offered one on August 8, 2018)).  There is no evidence

1   that Lieutenant Marmolejo specifically addressed either of these requested forms of relief.  (*See*

2   Doc. No. 35 at 10-11 ¶ 10; *see also id.* at 12 ¶ 17).  Because, according to Plaintiff, Lieutenant

3   Marmolejo asserted only that some of his requested relief was not available, this case is factually

4   distinguishable from Brown's situation.

5         Moreover, the Ninth Circuit held not only that Brown could have reasonably interpreted

6   the communications to him to mean that "no further relief will be available through the appeals

7   process," but also that this interpretation reflected CDCR's "actual procedures" regarding staff

8   complaints at that time.  422 F.3d at 937-38.  Here, an interpretation that Lieutenant Marmolejo

9   communicated, effectively, "no further relief, requested or unrequested, will be available" is

10  inconsistent with official policy.  The grievance forms indicate that if "dissatisfied" with the

11  second-level response, a prisoner proceeds to third-level review.  (Doc. No. 29-4 at 9 § F; 34-1 at

12  6 § F, 9 § F).  And, the regulations plainly provide that third-level review can yield different

13  results.  Cal. Code Regs. tit. 15 § 3084.1(b) ("All lower level reviews are subject to modification

14  at the third level of review").  Thus, this case does not resemble Brown's.

15        In sum, the Court concludes that Plaintiff has failed to establish a dispute of material fact

16  as to whether he was reliably informed that no further administrative remedies were available as

17  to the August 31, 2018 toilet malfunction.  To create a genuine dispute on exhaustion, a plaintiff

18  must do more than merely state that officials verbally "instructed" or "informed" him that no

19  other "requested remedies" were available in contravention to policy.  *See Booth,* 532 U.S. at 739;

20  *Brown*, 422 F.3d at 938-39.  Plaintiff's representations, which are not supported by factual detail

21  and which arose only on sur-reply, without explanation as to why he asserted directly contrary

22  facts in his initial opposition, do not meet this burden.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at

23  387 (more than "mere scintilla" of evidence necessary to defeat summary judgment).

24                              **IV.   CONCLUSION**

25        Defendants satisfied their burden of establishing that Plaintiff failed to exhaust his

26  administrative remedies as to the August 31, 2018 toilet malfunction.  Plaintiff has failed to come

27  forward with sufficient evidence from which a reasonable juror could conclude that Plaintiff

28  received all available remedies or was reliably informed that no remedies were available.

1    Defendants are thus entitled to summary judgment on the issue of exhaustion.

2            Accordingly, it is ORDERED:

3                1.   The Clerk shall assign this case to a district judge.

4    It is further RECOMMENDED:

5                2.   Defendants' Motion for Summary Judgement (Doc. No. 29) be GRANTED.

6                3.   The Clerk of Court be directed to terminate any pending motions/deadlines and

7                     close this case.

8                                   NOTICE TO PARTIES

9            These findings and recommendations will be submitted to the United States district judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

11   days after being served with these findings and recommendations, a party may file written

12   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

13   Findings and Recommendations."  Parties are advised that failure to file objections within the

14   specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

15   838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

16   Dated:    December 10, 2021

17                                          HELENA M. BARCH-KUCHTA
                                            UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28

                                            21